IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


JAMES LEROY HEPPLER, JR.,

                    Plaintiff,

vs.                                     Case No. 12-1267-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

                    Defendant.


MEMORANDUM AND ORDER

    This is an action reviewing the final decision of the

Commissioner of Social Security denying the plaintiff disability

insurance benefits and supplemental security income payments.

The matter has been fully briefed by the parties.

**I.   General legal standards**

    The court's standard of review is set forth in 42 U.S.C.

§ 405(g), which provides that "the findings of the Commissioner

as to any fact, if supported by substantial evidence, shall be

conclusive."  The court should review the Commissioner's

decision to determine only whether the decision was supported by

substantial evidence and whether the Commissioner applied the

correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984

(10th Cir. 1994).  Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

scintilla, but less than a preponderance, and is satisfied by
such evidence that a reasonable mind might accept to support the
conclusion.  The determination of whether substantial evidence
supports the Commissioner's decision is not simply a
quantitative exercise, for evidence is not substantial if it is
overwhelmed by other evidence or if it really constitutes mere
conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).
Although the court is not to reweigh the evidence, the findings
of the Commissioner will not be mechanically accepted.  Nor will
the findings be affirmed by isolating facts and labeling them
substantial evidence, as the court must scrutinize the entire
record in determining whether the Commissioner's conclusions are
rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan.
1992).  The court should examine the record as a whole,
including whatever in the record fairly detracts from the weight
of the Commissioner's decision and, on that basis, determine if
the substantiality of the evidence test has been met.  Glenn, 21
F.3d at 984.

    The Social Security Act provides that an individual shall
be determined to be under a disability only if the claimant can
establish that they have a physical or mental impairment
expected to result in death or last for a continuous period of
twelve months which prevents the claimant from engaging in
substantial gainful activity (SGA).  The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On March 25, 2011, administrative law judge (ALJ) James Harty issued his decision (R. at 20-28). Plaintiff alleges that he has been disabled since January 12, 2009 (R. at 20). Plaintiff is insured for disability insurance benefits through

September 30, 2012 (R. at 22). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since plaintiff's alleged onset date (R. at 22). At step two, the ALJ found that plaintiff has the following severe impairments: schizoaffective disorder and panic disorder without agoraphobia (R. at 22). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 23). After determining plaintiff's RFC (R. at 24), the ALJ determined at step four that plaintiff is unable to perform his past relevant work (R. at 26). At step five, the ALJ found that plaintiff could perform jobs that exist in significant numbers in the national economy (R. at 27-28). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 28).

**III. Did the ALJ err in his consideration of plaintiff's daily activities?**

In his decision, the ALJ made the following finding when evaluating plaintiff's credibility:

> The claimant's self-reported activities of daily living are inconsistent with allegations of totally debilitating symptomatology. The claimant reported his activities include watching television and performing household chores. He could obtain a driver's license if he wanted one. He is able to pay bills and count change. While he testified that he did not like to leave the house, he also claimed that he liked to take walks twice each day and in the adult function report he stated that he was able to go shopping.

5

(R. at 25).

According to the regulations, activities such as taking
care of yourself, household tasks, hobbies, therapy, school
attendance, club activities or social programs are generally not
considered to constitute substantial gainful activity.  20
C.F.R. § 404.1572(c) (2013 at 399).  Furthermore, although the
nature of daily activities is one of many factors to be
considered by the ALJ when determining the credibility of
testimony regarding pain or limitations, Thompson v. Sullivan,
987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind
that the sporadic performance of household tasks or work does
not establish that a person is capable of engaging in
substantial gainful activity.  Krauser v. Astrue, 638 F.3d 1324,
1332-1333 (10th Cir. 2011); Thompson, 987 F.2d at 1490.

In the case of Draper v. Barnhart, 425 F.3d 1127, 1130-1131
(8th Cir. 2005), the ALJ noted that the claimant engaged in
household chores, including laundry, grocery shopping, mowing,
cooking, mopping and sweeping.  The ALJ concluded that
claimant's allegations of disabling pain were inconsistent with
her reports of her normal daily activities and were therefore
not deemed credible.  The court found that substantial evidence
did not support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her
> home and does her best to engage in ordinary**

**life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work**. As we said in McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc), the test is whether the claimant has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." In other words, evidence of performing general housework does not preclude a finding of disability. In Rainey v. Dep't of Health & Human Servs., 48 F.3d 292, 203 (8th Cir.1995), the claimant washed dishes, did light cooking, read, watched TV, visited with his mother, and drove to shop for groceries. We noted that these were activities that were not substantial evidence of the ability to do full-time, competitive work. In Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir.1996), the ALJ pointed to the claimant's daily activities, which included making her bed, preparing food, performing light housekeeping, grocery shopping, and visiting friends. We found this to be an unpersuasive reason to deny benefits: "**We have repeatedly held...that 'the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work.**'" Id. (quoting Hogg v. Shalala, 45 F.3d 276, 278 (8th Cir.1995)). Moreover, we have reminded the Commissioner

> **that to find a claimant has the residual functional capacity to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world...The ability to do light housework with assistance, attend church, or**

>           **visit with friends on the phone
>           does not qualify as the ability to
>           do substantial gainful activity**.
>
>           Thomas v. Sullivan, 876 F.2d 666, 669 (8th
>           Cir.1989) (citations omitted).

Draper, 425 F.3d at 1131 (emphasis added).

Watching television, performing household chores, paying bills, counting change, taking walks and going shopping do not qualify as the ability to do substantial gainful activity. Watching television is not inconsistent with allegations that a person is unable to work.  See Krauser v. Astrue, 638 F.3d 1324, 1333 (10th Cir. 2011)(watching television not inconsistent with allegations of pain and concentration problems).  What is particularly troublesome is the language of the ALJ that plaintiff's daily activities are inconsistent with allegations of "totally debilitating symptomatology" (R. at 25).  One does not need to be utterly or totally incapacitated in order to be disabled.  Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); Jones v. Sullivan, 804 F. Supp. 1398, 1405 (D. Kan. 1992).  Therefore, on remand, the ALJ will need to examine plaintiff's daily activities in light of the regulations and case law set forth above.

Furthermore, when evaluating plaintiff's credibility, an ALJ must explain and support with substantial evidence which part(s) of a claimant's testimony he does not believe and why.

McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10ᵗʰ Cir. 2002).  The

ALJ failed to identify which part(s) of a claimant's testimony

he did not believe and why; the ALJ simply set forth reasons for

not finding him to be fully credible (R. at 25-26; Doc. 16 at

12).  When this case is remanded, the ALJ should explain and

support with substantial evidence which part(s) of a claimant's

testimony he does not believe and why.

**IV.  Do the ALJ's RFC rulings comply with the requirements of SSR 96-8p?**

The ALJ found that plaintiff had an RFC with the following

nonexertional impairments (the ALJ found no exertional

limitations):

> he is limited to simple, routine repetitive
> tasks not performed in a fast-paced
> production environment (which is an
> environment in which other people control
> the pace, such as on an assembly line).  He
> is also limited to occupations that only
> involve simple, work-related decisions and
> in general relatively few changes.  He is
> limited to occasional interaction with
> supervisors and the general public.

(R. at 24).

Dr. Hon, a treating physician, opined on a mental RFC

assessment form that plaintiff had marked impairments in 11

categories, moderate impairments in 5 categories, and no

significant limitations in 4 categories (R. at 317-319, 323-

326).  The ALJ found that his assessment was inconsistent with

the other evidence of record, including the doctor's own treatment notes.  The ALJ noted that Dr. Hon gave plaintiff a GAF of 55, indicating moderate limitations, which, according to the ALJ, is not consistent with Dr. Hon's opinion that the plaintiff is unable to work.[2]  The ALJ therefore gave "little" weight to the opinions of Dr. Hon (R. at 26).

Dr. Fantz completed a non-examining state agency mental RFC assessment (R. at 287-299, 301-303).  He opined that plaintiff had moderate limitations in the ability to understand, remember and carry out detailed instructions (R. at 301).  This assessment was affirmed by Dr. Stern (R. at 314).  The ALJ gave "some" weight to this opinion, stating that the record does not support the opinion of Dr. Fantz that plaintiff has no difficulties with social interaction or problems with adaptation (R. at 26).

The ALJ made RFC findings which included the mental limitations contained in the assessment by Dr. Fantz.  The ALJ also included some additional mental limitations contained only in Dr. Hon's assessment, including limitations in plaintiff's ability to interact with the public and supervisors, and respond

---

[2] GAF (global assessment of functioning) scores can be found in the <u>Diagnostic and Statistical Manual of Mental Disorders</u>.  The scores in this case represent the following:

51-60: **Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational or school functioning** (e.g., few friends, conflicts with peers or co-workers).

<u>Diagnostic and Statistical Manual of Mental Disorders</u> (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

to changes in the workplace (R. at 24, 301-302, 317-318).[3] However, the ALJ failed to explain why he only included these additional limitations, but not others.

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated

---

[3] Dr. Hon gave plaintiff "marked" limitations in these categories (R. at 318). The ALJ limited plaintiff to work that involved in general relatively few changes, and was limited to occasional interaction with supervisors and the general public (R. at 24). Thus, it would appear that the ALJ gave some weight to these limitations by Dr. Hon, as the ALJ provided no other reason for including these limitations.

so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995). When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

In the case of Frye v. Astrue, Case No. 10-1251-SAC (D. Kan. July 6, 2011; Doc. 13 at 7-10), the ALJ, as in the case before the court, gave "little" weight to one medical opinion, and "some" weight to the state agency assessment. However, the ALJ made RFC findings that did not clearly correlate with any evidence in the case record. The ALJ provided no explanation for making RFC findings which were more restrictive than the medical assessment given "some" weight, but less restrictive than the other medical assessment given "little" weight. The

court therefore held that the ALJ failed to comply with SSR 96-8p.

As set forth above, "the RFC assessment must include a narrative discussion describing how the evidence *supports each conclusion*, citing specific medical facts and nonmedical evidence." Wells v. Colvin, __ F.3d ___, 2013 WL 4405723 at *5 (10th Cir. Aug. 19, 2013)(emphasis in original). The ALJ gave "little" weight to the opinions of Dr. Hon and "some" weight to the medical opinions from Dr. Fantz. However, the ALJ never provided a clear explanation for making RFC findings more restrictive than the assessment by Dr. Fantz, but less restrictive than the assessment by Dr. Hon. The ALJ never explained how the medical and other evidence supported the limitations set out in the ALJ's RFC findings. The ALJ did not cite to any evidence or testimony, which, in his opinion, supported the mental limitations set forth in his RFC findings, including some limitations found only in Dr. Hon's assessment, but did not support many of the other mental limitations contained in the medical opinion by Dr. Hon.[4] An ALJ should explain why he rejected some limitations contained in an assessment, but appeared to adopt other limitations contained in the assessment. Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007). As in Haga, in the case before the court it is simply

---

[4] An ALJ can rely on all the record evidence, including but not limited to medical opinions in the file when reaching his RFC determination. Wells v. Colvin, 2013 WL 4405723 at *8.

unexplained why the ALJ included some of the limitations found in Dr. Hon's assessment, but not others. The court therefore concludes that the ALJ's RFC findings fail to comply with SSR 96-8p. This case shall therefore be remanded in order for the ALJ to make RFC findings that comply with SSR 96-8p.

**V. Did the ALJ err in giving somewhat greater weight to the opinions of Dr. Fantz as compared to the opinions of Dr. Hon, a treatment provider?**

As noted above, the ALJ gave "some" weight to the opinions of Dr. Fantz, who did not examine or treat the plaintiff, and gave only "little" weight to the opinions of Dr. Hon, a treatment provider. The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around. Treating

source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations. If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources. Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). A treating source opinion not entitled to controlling weight is still

entitled to deference and must be weighed using all of the

following factors:

(1) the length of the treatment relationship and the frequency
of examination;
(2) the nature and extent of the treatment relationship,
including the treatment provided and the kind of examination or
testing performed;
(3) the degree to which the physician's opinion is supported by
relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area
upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to
support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

     After considering the above factors, the ALJ must give good

reasons in his/her decision for the weight he/she ultimately

assigns the opinion.  If the ALJ rejects the opinion completely,

he/she must then give specific, legitimate reasons for doing so.

Watkins, 350 F.3d at 1301.

     The ALJ discussed the medical records of Dr. Hon, and

explained why the ALJ found that they did not support the

opinions expressed by Dr. Hon, and therefore why he gave

"little" weight to his opinions.  The ALJ indicated that he gave

"some" weight to the opinions of Dr. Fantz, but concluded that

plaintiff had some additional limitations.  Although plaintiff

argues that the form filled out by Dr. Fantz was a check-the-box

form (Doc. 11 at 11), in fact, Dr. Fantz provided a narrative

explanation for his findings, including a review of some of the

treatment notes (R. at 299).  Dr. Stern, who affirmed the

opinions of Dr. Fantz, also included a narrative discussion of

the evidence to explain his findings, including a review of some

of the treatment notes (R. at 314).  By contrast, Dr. Hon

provided no narrative explanation for his findings.

The court will not reweigh the evidence or substitute its

judgment for that of the Commissioner.  Hackett v. Barnhart, 395

F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d

903, 905, 908, 909 (10th Cir. 2002).  Although the court will

not reweigh the evidence, the conclusions reached by the ALJ

must be reasonable and consistent with the evidence.  See Glenn

v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must

affirm if, considering the evidence as a whole, there is

sufficient evidence which a reasonable mind might accept as

adequate to support a conclusion).  However, regardless of the

relative weight given to the medical opinions, as set forth

above, the ALJ must comply with SSR 96-8p, and describe how the

evidence supports each conclusion.  This is especially important

when the ALJ makes RFC findings which were more restrictive than

a medical assessment given "some" weight, but less restrictive

than another medical assessment given "little" weight.

Furthermore, in light of the errors by the ALJ in his analysis

of plaintiff's credibility and daily activities, when this case

is remanded, the ALJ should make new findings regarding the

relative weight to give to the medical opinions after giving

proper consideration to plaintiff's credibility and daily

activities.

IT IS THEREFORE ORDERED that the judgment of the

Commissioner is reversed and remanded pursuant to sentence four

of 42 U.S.C. § 405(g) for further proceedings consistent with

this memorandum and order.

Dated this 28th day of August, 2013, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge